1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11   BILLY ROBERT COOK, MICHAEL              No. 2:15-cv-02339-KJM-KJN
     JOHN MAROULAS, and BECKY
12   SMISEK-GAGE,

13                  Plaintiffs,              ORDER

14        v.

15   CITY OF FAIRFIELD, a municipal
     corporation; FORMER CITY OF
16   FAIRFIELD POLICE CHIEF WALT
     TIBBET, in his individual and official
17   capacities; REBECCA BELK and AARON
     BERTSCH, individually and in their
18   official capacities as police sergeants for
     the City of Fairfield, FRANK PIRO,
19   KELLY ROMBACH, ADAM BRUNIE,
     CHRISTOPHER GRIMM, HEITH
20   PULSIPHER, and DOES 1-50,
     individually and in their capacities as peace
21   officers,

22                  Defendants.

23

24            Plaintiffs bring this civil rights action against the City of Fairfield and several

25   members of the Fairfield Police Department in connection with the alleged forceful entry of their

26   home and forceful arrest on November 13, 2013.  The action is before the court on defendants'

27   motion to dismiss.  Mot., ECF No. 27.  Plaintiffs filed an opposition to the motion, Opp'n, ECF

28   No. 31, and defendants a reply, Reply, ECF No. 32.

                                                1

The court held a hearing on October 7, 2016, at which Justin K. Tabayoyon appeared for plaintiffs and Parry Black appeared for defendants.  Mins., ECF No. 34.  As explained below, the court GRANTS IN PART and DENIES IN PART the motion, with leave to amend.

I.      BACKGROUND

        A.      Procedural History and Claims Raised

        Plaintiffs filed their original complaint on November 11, 2015, a first amended complaint on February 26, 2016, a second amended complaint on May 22, 2016, and the operative third amended complaint on June 24, 2016. Compl., ECF No. 1; First Am. Compl. (FAC), ECF No. 16; Second Am. Compl. (SAC), ECF No. 21; Third Am. Compl. (TAC), ECF No. 24.

        Plaintiffs' third amended complaint makes eight claims against the following named defendants: City of Fairfield; former Chief of Police for Fairfield Police Department (FPD) Walt Tibbett; FPD Sergeants Rebecca Belk and Aaron Bertsch; and FPD Officers Frank Piro, Kelly Rombach, Adam Brunie, Christopher Grimm, and Heith Pulsipher.  It also sues up to fifty unnamed defendants.[1]  *See generally* TAC.  Plaintiffs bring three federal claims and five state claims.

/////

/////

/////

_____

    [1] The Ninth Circuit provides "'[plaintiffs] should be given an opportunity through discovery to identify [] unknown defendants'" "in circumstances . . . 'where the identity of the alleged defendant[] [is] not [] known prior to the filing of a complaint.'"  *Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (quoting *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980)) (modifications in original).  Plaintiffs are cautioned that such defendants will be dismissed where "'it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds.'"  *Id*. (quoting *Gillespie,* 629 F.2d at 642).  Federal Rule of Civil Procedure 4(m), as recently amended, provides for dismissal of defendants not served within 90 days of filing of the complaint unless plaintiffs show good cause.  *See Glass v. Fields*, No. 1:09-cv-00098-OWW-SMS PC, 2011 U.S. Dist. LEXIS 97604 (E.D. Cal. Aug. 31, 2011); *Hard Drive Prods. v. Does*, No. C 11-01567 LB, 2011 U.S. Dist. LEXIS 109837, at *2–4 (N.D. Cal. Sep. 27, 2011).

The federal claims are based on 42 U.S.C. § 1983, and are as follows:

 (1) Fourth Amendment violations, including unreasonable search and seizure, excessive force and deprivation of liberty without due process in connection with the events occurring on November 13, 2013, against defendants Piro, Rombach, Brunie, Grimm, Pulsipher and Belk ("November 13 defendants");

(2) Fourth Amendment violations against the City based on a theory of municipal liability; and

(3) Fourth Amendment violations against defendants Tibbet, Belk and Bertsch ("supervisory defendants") based on theories of supervisory liability.

TAC ¶¶ 43–80.

The state claims are as follows:

(4) Negligence against all defendants;

(5) Interference with civil rights in violation of California Civil Code § 52.1 ("Bane Act") against the November 13 defendants;

(6) Assault and battery against the November 13 defendants;

(7) False imprisonment against the November 13 defendants; and

(8) Intentional infliction of emotional distress (IIED) against defendants Piro, Rombach and Brunie.

TAC ¶¶ 81–118.

On July 15, 2016, defendants moved to dismiss portions of the third amended complaint, including the second, third and fourth claims as to various defendants.  Mot. at 7. Specifically, defendants move to dismiss: the second claim for failure to state a claim against the City; the third claim as unsupported by sufficient facts as to defendants Tibbet and Bertsch; and the fourth claim as lacking any statutory basis and as unsupported by sufficient facts as to the City and defendants Tibbet, Bertsch and Belk.  *Id.*  In addition, defendants move to dismiss plaintiffs' prayer for punitive damages as unsupported by sufficient facts as to defendants Tibbet and Bertsch.  *Id.*

/////

1    B.    Factual Allegations

2         Plaintiffs allege that on or about November 13, 2013, several Fairfield Police

3    Department officers were dispatched to the residence of plaintiff Bill Robert Cook ("Cook")

4    regarding a temporary guardianship order pertaining to Cook's daughter, Billy Jean Cook ("Billy

5    Jean").  TAC ¶ 22.  At that time, plaintiffs Cook, Becky Smisek-Gage and Michael John

6    Maroulas all were inside Cook's home, but Billy Jean was not.  *Id.*; *see also* Opp'n 5.  Defendant

7    officer Frank Piro spoke with Amy Iriarte outside of Cook's home, and Iriarte indicated she and

8    her wife had temporary custody of Billy Jean.  TAC ¶ 22.  Iriarte produced a temporary

9    guardianship order for Piro's inspection and explained that Billy Jean had repeatedly violated the

10   order by running away to stay at Cook's residence.  *Id.*  Iriarte further explained that Billy Jean

11   had been using marijuana with Cook.  *Id.*

12        Piro, without inquiring further into Iriarte's allegations and without verifying Billy

13   Jean's presence, approached the residence and spoke to Cook through a closed screen door.  *Id.*

14   ¶¶ 23–24.  Piro asked Cook questions and then ordered Cook to remove his hands from his

15   pockets.  *Id.*  Cook complied.  *Id.*  Cook indicated Billy Jean was not present and declined to

16   speak with Piro any further.  *Id.*  At that point, Piro kicked Cook's front door open, entered

17   Cook's residence and repeatedly struck Cook with a baton.  *Id.* ¶¶ 24–25.  As a result, Cook

18   suffered multiple fractures of his left rib cage.  *Id.* ¶ 39.  Meanwhile, defendant officer Kelly

19   Rombach pulled Smisek-Gage from the apartment and repeatedly threw her to the ground.  *Id.*

20   ¶ 26.  Defendant officer Heith Pulsipher then threw Smisek-Gage to the ground, and defendant

21   officer Christopher Grimm and defendant sergeant Rebecca Belk violently held Smisek-Gage to

22   the ground and handcuffed her.  *Id.*  Rombach then attacked plaintiff Maroulas as he tried to exit

23   the apartment, and defendant officer Adam Brunie held Maroulas down as Rombach repeatedly

24   punched him in the face.  *Id.* ¶ 27.

25        Plaintiffs allege that defendants colluded to fabricate reasons to arrest plaintiffs:

26   they say they each were falsely arrested for resisting arrest and that Cook and Smisek-Gage also

27   were falsely arrested for battering Piro and Rombach, respectively.  *Id.* ¶¶ 30–31.  In a subsequent

28   /////

4

1    joint criminal prosecution, all three plaintiffs were acquitted by a jury of all charges; the

2    complaint does not make clear which charges were presented to the jury. *Id.* ¶ 32.

3          Cook filed a claim with the FPD on May 6, 2014, alleging that FPD police officers

4    used excessive force and conducted an illegal search and seizure. *Id.* ¶ 33.  Although Cook

5    received a letter acknowledging receipt of his claim, Cook never received notice of any action or

6    inaction on his claim from FPD. *Id.*

7    II.    LEGAL STANDARD

8          Under Rule 12(b)(6), a party may move to dismiss a complaint for "failure to state

9    a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A court may dismiss "based

10   on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a

11   cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)

12   (citing *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533–34 (9th Cir. 1984)).

13         Although a complaint need contain only "a short and plain statement of the claim

14   showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to survive a motion

15   to dismiss this short and plain statement "must contain sufficient factual matter . . . to 'state a

16   claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

17   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Johnson v. City of Shelby, Miss.*,

18   135 S. Ct. 346, 347 (2014) (party must plead facts sufficient to show that her claim has

19   "substantive plausibility").  A complaint must include something more than "an unadorned, the-

20   defendant-unlawfully-harmed-me accusation" or "'labels and conclusions' or 'a formulaic

21   recitation of the elements of a cause of action.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550

22   U.S. at 555).  Determining whether a complaint will survive a motion to dismiss for failure to

23   state a claim is a "context-specific task that requires the reviewing court to draw on its judicial

24   experience and common sense." *Id.* at 679.  Ultimately, the inquiry focuses on the interplay

25   between the factual allegations of the complaint and the dispositive issues of law in the action.

26   *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

27         In making this context-specific evaluation, this court must construe the complaint

28   in the light most favorable to the plaintiff and accept as true its factual allegations. *Erickson v.*

1    *Pardus*, 551 U.S. 89, 93–94 (2007).  This rule does not apply to "a legal conclusion couched as a

2    factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), nor to "allegations that

3    contradict matters properly subject to judicial notice" or to material attached to or incorporated by

4    reference into the complaint.  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988–89 (9th Cir.

5    2001).  A court's consideration of documents attached to a complaint or incorporated by reference

6    or matters of judicial notice will not convert a motion to dismiss into a motion for summary

7    judgment.  *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003); *Parks Sch. of Bus. v.

8    Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995); *cf. Van Buskirk v. Cable News Network, Inc.*,

9    284 F.3d 977, 980 (9th Cir. 2002) (noting that even though the court may look beyond pleadings

10   in analyzing a motion to dismiss, generally the court is limited to the face of the complaint).  The

11   Ninth Circuit has articulated a two-part rule to govern allegations generally in a complaint or

12   counterclaim in light of *Iqbal* and *Twombly*:

13
14
15
16
17
> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

18   *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2012).

19   III.    DISCUSSION

20          A.     Municipal Liability Against City of Fairfield (Second Claim)

21                 Defendants challenge plaintiffs' Fourth Amendment claims under 48 U.S.C.

22   § 1983 against the City, arguing plaintiffs have insufficiently pled (1) a City "policy, practice, or

23   custom," (2) the City's ratification of any relevant subordinate's decision, or (3) the City's

24   inadequate training of employees.  Mot. 11–17.  In response, plaintiffs argue they have

25   sufficiently alleged a government policy or custom.  Opp'n 8–9.  Plaintiffs further argue their

26   remaining theories of ratification and inadequate training rely on the City's omissions, which

27   cannot be pled with greater particularity without the benefit of discovery.  *Id.* at 9.

28   /////

1       To withstand a motion to dismiss a section 1983 claim against a municipal

2    defendant based on Fourth Amendment violations, a plaintiff must show: "(1) that he was

3    'deprived of [his] constitutional rights by defendants and their employees acting under color of

4    state law; (2) that the defendants have customs or policies which amount to deliberate

5    indifference to . . . constitutional rights; and (3) that these policies [were] the moving force behind

6    the constitutional violations.'" *Gant v. Cty. of L.A.*, 772 F.3d 608, 617 (9th Cir. 2014) (quoting

7    *Lee v. City of L.A.*, 250 F.3d 668, 681–82 (9th Cir. 2001)).  A plaintiff must show "the action that

8    is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation,

9    or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc.*

10   *Servs.*, 436 U.S. 658, 690–91 (1978).  Alternatively, a plaintiff may establish what courts

11   commonly refer to as "*Monell* liability" by showing the unconstitutional action was the result of a

12   "governmental 'custom' even though such a custom has not received formal approval through the

13   body's official decisionmaking channels." *Id.*  Although a municipality may be liable on this

14   limited basis, it is not vicariously liable for its employees' actions, as "there is no respondeat

15   superior liability under section 1983." *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).

16       Below, the court addresses each of plaintiffs' theories supporting *Monell* liability

17   in turn.

18         1.  Policy, Practice or Custom

19       Plaintiffs' first theory under *Monell* alleges the City permitted and encouraged

20   FPD policies and customs that caused plaintiffs' constitutional injuries.  TAC ¶ 52.

21       In *A.E. ex rel. Hernandez v. County of Tulare*, the Ninth Circuit clarified the

22   requisite level of detail required for a policy, practice or custom claim to survive dismissal.

23   666 F.3d 631 (9th Cir. 2012).  The plaintiff, a minor who was sexually abused while in foster

24   care, alleged the county was liable under section 1983 because the defendants "performed their

25   acts and omissions under the ordinances, regulations, customs, and practices of Defendant County

26   of Tulare . . . " and "maintained or permitted an official policy, custom, or practice of knowingly

27   permitting the occurrence of the type of wrongs" alleged in the complaint. *Id.* at 635 (internal

28   quotations omitted).  The plaintiffs, the Ninth Circuit wrote, did not put forth additional facts

1   regarding the specific nature of this alleged "policy, custom or practice," other than to state that

2   the policy related to "the custody, care and protection of dependent minors." *Id.* at 637.  The

3   Ninth Circuit held these allegations were insufficient to state a claim of *Monell* liability.  *Id.*

4      Since *A.E.*, courts in this circuit have declined to dismiss complaints that contain

5   specific allegations regarding the underlying policy or custom.  For example, in *Mateos-Sandoval*

6   *v. Cty. of Sonoma,* the plaintiffs alleged that defendants "routinely enforce" California Vehicle

7   Code § 14602.6, which authorizes the impoundment of a vehicle for thirty days under limited

8   circumstances, by regularly seizing and impounding vehicles on impermissible bases set out in

9   the complaint.  942 F. Supp. 2d 890, 899–900 (N.D. Cal. 2013), *aff'd sub nom. Sandoval v. Cty.*

10  *of Sonoma*, 591 Fed. App'x 638 (9th Cir. 2015) (unpublished), *opinion amended and superseded*

11  *on denial of reh'g*, 599 Fed. App'x 673 (9th Cir. 2015) (unpublished) (noting, for example,

12  complaint's allegation of impoundment where driver did not have a current driver's license).  The

13  court found the complaint pled facts sufficient to state a claim of *Monell* liability against

14  defendants.  942 F. Supp. 2d at 900.  Other courts similarly have looked for "additional facts

15  regarding the specific nature" of the alleged policy, custom or practice, as required by *A.E.  See,*

16  *e.g.*, *Little v. Gore*, 148 F. Supp. 3d 936, 957–58 (S.D. Cal. 2015) (*Monell* claim against Sheriff

17  sufficient where plaintiff alleged he directed law enforcement "to seize and destroy marijuana and

18  marijuana products soon after collection without regard to the materiality or exculpatory nature of

19  the evidence"); *Johnson v. Shasta Cty.*, 83 F. Supp. 3d 918, 931–32 (E.D. Cal. 2015) (denying

20  motion to dismiss where *Monell* allegations described practices of excessive force and unlawful

21  arrests); *Est. of Prasad ex rel. Prasad v. Cty. of Sutter*, 958 F. Supp. 2d 1101, 1114–16 (E.D. Cal.

22  2013) (*Monell* claims for unconstitutional violations at jail sufficient in light of allegations of

23  defendants' non-comprehensive medical treatment policies).

24     In this case, plaintiffs specifically allege the City's following customs, policies,

25  practices or procedures, including:

26     a. To use or tolerate the use of excessive and/or unjustified force;

27     b. To cover-up violations of constitutional right by any and all of
   the following:

28

1                        i. by failing to properly investigate and/or evaluate complaints or incidents of excessive and unreasonable force, and/or unlawful seizures;

                        ii. by ignoring and/or failing to properly and adequately investigate and discipline unconstitutional or unlawful police activity; and

                        iii. by allowing, tolerating, and/or encouraging police officers to: fail to file complete and accurate police reports; file false police reports; make false statements; intimidate, bias and/or "coach" witnesses to give false information and/or attempt to bolster officer' stories; and/or obstruct or interfere with investigations of unconstitutional or unlawful police conduct, by withholding and/or concealing material information.

        c. To allow, tolerate, and/or encourage a "code of silence" among law enforcement officers and police department personnel, whereby an officer or member of the department does not provide adverse information against a fellow officer or member of the department;

        d. To use or tolerate inadequate, deficient, and/or improper procedures for handling, investigating, and reviewing complaints of officer misconduct made under California Government Code § 910 et seq.; and

        e. To fail to have and enforce necessary, appropriate, and lawful policies, procedures, and training programs to prevent or correct the unconstitutional conduct, customs, and procedures described in this Complaint and in subparagraphs (a) through (d) above, with deliberate indifference of the rights and safety of plaintiffs and the public, and in the face of an obvious need for such policies, procedures, and training programs.

TAC ¶ 52.

The court finds these allegations sufficiently "put forth additional facts regarding the specific nature" of the alleged policy, custom or practice to withstand dismissal. *A.E. ex rel. Hernandez*, 666 F.3d at 637. The allegations provide a similar level of detail as those accepted in other cases. *Mateos-Sandoval*, 942 F. Supp. at 899–900; *Little v. Gore*, 148 F. Supp. 3d at 957–58; *Johnson*, 83 F. Supp. 3d at 928.

Plaintiffs also have alleged sufficient facts to support the other elements of a *Monell* claim based on an official policy or custom, in alleging a violation of several constitutional rights, *id.* ¶ 44, the "failures to properly and adequately . . . monitor, supervise, evaluate, investigate, and discipline" defendants, *id.* ¶ 55, and that these failures "were a moving force and/or proximate cause" of the violations of plaintiffs' constitutional rights, *id.* Moreover,

1   plaintiffs allege the City has a "significant prior and subsequent history" of similar constitutional

2   violations, *id.* ¶ 57, and allege the City has twice been sued for similar incidents, each time for

3   conduct that included at least one of the individual defendants sued here, *id.* ¶¶ 58–61.  Taken

4   together, plaintiffs' allegations are sufficient to state a *Monell* claim on the basis of an official

5   policy or custom.

6          By demanding more, defendants misconstrue the appropriate standard for review

7   of the complaint.  Defendants seek dismissal because plaintiffs' allegations are "without factual

8   support," Mot. 12–17, but the court must accept as true the factual allegations in the complaint,

9   *Erickson*, 551 U.S. at 93–94, unless the allegation is merely "a legal conclusion couched as a

10  factual allegation," *Papasan*, 478 U.S. at 286.  For example, plaintiffs allege a "code of silence"

11  among law enforcement officers and police department personnel, whereby an officer or member

12  of the department does not provide adverse information against a fellow officer.  TAC ¶ 52(c).

13  This allegation describes a regular practice by police officers, is susceptible to factual proof or

14  disproof later on, and does not constitute a "legal conclusion."  Plaintiffs also allege defendants

15  had a regular practice of filing incomplete and inaccurate police reports.  TAC ¶ 52(b)(iii).  This

16  also is a factual allegation whose truth the court must assume for the purposes of this motion.

17         Taking plaintiffs' allegations as true and construing them in the light most

18  favorable to plaintiffs, as the court must, they plausibly suggest an entitlement to relief and give

19  defendants fair notice to mount their defense.

20         The court next considers plaintiffs' remaining theories of *Monell* liability.

21         2.  Ratification

22         Plaintiffs allege the City is also liable under *Monell* for its ratification of FPD

23  policies and customs, as well as the individual officers' actions, that led to plaintiffs' injuries.

24  TAC ¶¶ 52, 54, 66.

25         A plaintiff may claim *Monell* liability where an "official with final policy-making

26  authority ratifie[s] a subordinate's unconstitutional decision or action and the basis for it."

27  *Gillette v. Delmore*, 979 F.2d 1342, 1346–47 (9th Cir. 1992).  A policymaker's "knowledge of an

28  unconstitutional act does not, by itself, constitute ratification."  *Christie v. Iopa*, 176 F.3d 1231,

1239 (9th Cir. 1999).  Furthermore, "a policymaker's mere refusal to overrule a subordinate's completed act does not constitute approval."  *Id.*  Rather, ratification requires the authorized policymaker to make a "conscious, affirmative choice."  *Gillette*, 979 F.2d at 1347.  Ratification can be shown by a municipality's post-event conduct, including its conduct in an investigation of the incident.  *Henry v. Cty. of Shasta*, 132 F.3d 512, 518 (9th Cir. 1997); *Larez v. City of L.A.*, 946 F.2d 630, 645 (9th Cir. 1991) ("we can hardly think of better evidence" than statements made by the police chief after the underlying incident to support plaintiff's claims of the chief condoning and encouraging excessive use of force); *McRorie v. Shimoda*, 795 F.2d 780, 784 (9th Cir. 1986) ("Policy or custom may be inferred if, after [constitutional violations], . . . officials took no steps to reprimand or discharge the [prison] guards, or if they otherwise failed to admit the [prison] guards' conduct was in error."); *see also Christie*, 176 F.3d at 1240 (finding failure to discipline along with after-the-fact conduct indicating policymaker agreed with subordinate's conduct sufficient to show ratification).

Plaintiffs' ratification theory here relies on the City's alleged conduct both before and after the underlying incident on November 13, 2013, involving the forceful entry of their home and their forceful arrest.  *Compare* TAC ¶¶ 58–64, *with id.* ¶¶ 64–69.  Because the post-event allegations are sufficient, the court does not address whether pre-violation conduct can support a ratification theory.

Following the November 13, 2013 event, the City allegedly "continues to knowingly ratify the unconstitutional actions of officers by shifting the blame to the victims of excessive force, misusing the criminal justice system to obtain privileged and private information to discredit said victims or circumvent the discovery rules in civil rights violation matters," *id.* ¶ 66; has "knowingly allowed subordinate personnel to intentionally disperse false information to cover for officers' wrongdoing," *id.* ¶ 67; and continues "to inadequately and improperly investigate citizen complaints and claims of police misconduct," *id.* ¶ 69.  Paired with the allegations that plaintiffs were all falsely arrested for resisting arrest and that Cook and Smisek-Gage were falsely arrested for battery, *id.* ¶¶ 30–31, these allegations of defendants' subsequent conduct support the conclusion that they made a "conscious, affirmative choice" to ratify their

1   subordinates' actions. *Gillette*, 979 F.2d at 1347. Plaintiffs' allegations are sufficient to state a

2   *Monell* claim on the basis of ratification, and these allegations too provide the City fair notice to

3   defend itself against this accusation.

4            3.   Failure to Train

5            Plaintiffs' third theory of *Monell* liability alleges the City and FPD failed to train

6   employees, which caused plaintiffs' constitutional injuries. TAC ¶ 52.

7            To succeed on a failure to train theory under *Monell*, a plaintiff must show (1) "the

8   existing training program" is inadequate "in relation to the tasks the particular officers must

9   perform"; (2) the officials have been deliberately indifferent "to the rights of persons with whom

10  the police come into contact"; and (3) the inadequacy of the training "actually caused the

11  deprivation of the alleged constitutional right." *Merritt v. Cty. of L.A.*, 875 F.2d 765, 770 (9th

12  Cir. 1989) (internal citations and quotation marks omitted).

13           Plaintiffs allege the City failed to adequately train officers regarding each of the

14  policies and customs that the court has accepted as sufficiently pled above. *See* TAC ¶ 52(e).

15  Those policies and customs for which plaintiffs say additional training is necessary include the

16  appropriate use of force, *id.* ¶ 52(a); the proper investigation and evaluation of complaints

17  regarding unlawful force and unlawful seizures, *id.* ¶ 52(b)(i); the proper investigation and

18  disciplining of unlawful police activity, *id.* ¶ 52(b)(ii); the proper filing of accurate police reports,

19  *id.* ¶ 52(b)(iii); the appropriate circumstances in which to provide adverse information against a

20  fellow officer, *id.* ¶ 52(c); and the appropriate procedures for handling, investigating, and

21  reviewing officer misconduct complaints, *id.* ¶ 52(d). Given the specificity of subject matter

22  provided, plaintiffs' allegations sufficiently allege the inadequacy of training in relation to the

23  tasks particular officers must perform. The complaint further alleges the City failed to retrain

24  officers involved in prior lawsuits, including Officer Grimm, and instead promoted officers to the

25  role of Sergeant, including Bertsch. *Id.* ¶¶ 60, 62. Given the alleged history of constitutional

26  violations both before and since the relevant incident, these allegations support the claim of the

27  City's deliberate indifference to the rights of citizens. Finally, plaintiffs allege the failure to train,

28  /////

1    as with the other policies and customs they allege, was a moving force in the deprivations of

2    plaintiffs' constitutional rights, *id.* ¶¶ 55, 63.

3             The court finds plaintiffs' allegations are sufficient to state a claim for municipal

4    liability based on failure to train and to withstand a motion to dismiss.  Defendants' arguments to

5    the contrary attempt to impose an inappropriate evidentiary burden on plaintiffs at this stage.  In

6    sum, plaintiffs adequately allege each of their three theories of *Monell* liability.  Therefore, the

7    court DENIES defendants' motion as to plaintiffs' second claim.  The court proceeds to consider

8    defendants' remaining challenges.

9             B.       Supervisory Liability: Tibbet and Bertsch (Third Claim)

10            Defendants challenge plaintiffs' claim of supervisory liability against Tibbet and

11   Bertsch as unsupported by sufficient factual allegations.[2]  Mot. 17–18.

12            Under 42 U.S.C. § 1983, "supervisory officials are not liable for actions of

13   subordinates on any theory of vicarious liability."  *Hansen v. Black*, 885 F.2d 642, 645–46 (9th

14   Cir. 1989).  "[E]ach government official, his or her title notwithstanding, is only liable for his or

15   her own misconduct."  *Iqbal*, 556 U.S. at 677.  A claim of supervisory liability, therefore, must

16   focus on the supervisor's "'own culpable action or inaction in the training, supervision, or control

17   of his subordinates,' 'his acquiescence in the constitutional deprivations  of which the complaint

18   is made,' or 'conduct that show[s] a reckless or callous indifference to the rights of others.'"

19   *Starr*, 652 F.3d at 1205–06 (quoting *Larez*, 946 F.2d at 645–46).  The Ninth Circuit has clarified

20   the contours of supervisory liability in the wake of *Iqbal*:

21               *Iqbal* makes crystal clear that constitutional tort claims against
22               supervisory defendants turn on the requirements of the particular
                 claim—and, more specifically, on the state of mind required by the
23               particular claim—not on a generally applicable concept of

24   /////

25   /////

26   _____

27         [2] Although Chief Tibbet and Sergeants Bertsch and Belk all are named in plaintiffs'
     supervisory liability claims, TAC ¶¶ 72–80, defendants do not move to dismiss plaintiffs' claim
     against Belk, who was present during the November 13, 2013, incident. TAC ¶ 28.  The current
28   allegations against Belk may be included in any amended complaint.

13

1
2

> supervisory liability . . . .  Put simply, constitutional tort liability after *Iqbal* depends primarily on the requisite mental state for the violation alleged.

3
4
5
6
7
8
9
10
11
12
13

*OSU Student Alliance v. Ray*, 699 F.3d 1053, 1071 (9th Cir. 2012).  "[W]hen a supervisory official advances or manages a policy that instructs its adherents to violate constitutional rights, then the official specifically intends for such violations to occur.  Claims against such supervisory officials, therefore, do not fail on the state of mind requirement, be it intent, knowledge, or deliberate indifference."  *Smith v. Schwarzenegger*, No. 14-00060, 2014 WL 2875627 (E.D. Cal. June 24, 2014) (citing *OSU Student Alliance*, 699 F.3d at 1076).  "Advancing a policy that requires subordinates to commit constitutional violations is always enough for section 1983 liability, no matter what the required mental state, so long as the policy proximately causes the harm—that is, so long as the plaintiff's constitutional injury in fact occurs pursuant to the policy."  *OSU Student Alliance*, 699 F.3d at 1076.

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

As discussed above, plaintiffs allege various policies and customs for which the City may be held liable.  Plaintiffs allege each of those policies and customs were "directed, encouraged, allowed, and/or ratified by policy making officers for [the City] and the FPD, including but not limited to Defendant Chief [Tibbet]."  TAC ¶ 52.  On this basis alone, plaintiffs' complaint is sufficient as to Tibbet, because "[a]dvancing a policy that requires subordinates to commit constitutional violations is always enough for section 1983 liability."  *OSU Student Alliance*, 699 F.3d at 1076.  Subsequent paragraphs of the complaint also include Tibbet and Bertsch along with the City as relevant policymakers.  *See, e.g.*, TAC ¶ 67 (all three defendants "knowingly allowed subordinate personnel to intentionally disperse false information to cover for officers' wrongdoing"); *id.* ¶ 68 ("had a policy and practice to deny any wrong doing and fail to discipline officers for their wrongdoing"); *id.* ¶ 69 ("inadequately and improperly investigate citizen complaints and claims of police misconduct").  Plaintiffs' allegations regarding supervisory defendants' failure to investigate is especially applicable to Bertsch, who plaintiffs allege was responsible for "reviewing, initiating, and/or investigating citizens' complaints as a sergeant working in FPD's Professional Standards Unit."  *Id.* ¶ 74.

1   The court finds plaintiffs' allegations in support of their position that Tibbet and

2   Bertsch may be independently liable for their own conduct as it relates to the alleged

3   unconstitutional violations are sufficient to withstand dismissal.  Defendants' characterization of

4   these allegations as "vague conclusions" fails in light of the direct connections plaintiffs'

5   complaint draws to each supervisory defendant.  Plaintiffs' allegations are sufficient to state a

6   claim of supervisory liability and give each supervisory defendant fair notice to enable him to

7   defend.

8   The court DENIES defendants' motion as to plaintiffs' third claim.

9   C.   Negligence: Tibbett, Bertsch, Belk and the City (Fourth Claim)

10   Defendants challenge plaintiffs' claim of negligence liability against the City and

11   supervisory defendants Tibbet, Belk and Bertsch.  Mot. 19–21.  As to the City, defendants argue

12   plaintiffs failed to allege a necessary statutory basis for a claim of direct negligence, *id.* at 19–20,

13   and thus lack a cognizable legal theory.  As to the supervisory defendants, defendants argue

14   plaintiffs failed to allege facts sufficient to plead negligent "hiring, investigation, training,

15   evaluation, discipline" or "making, enforcing, and/or tolerating the wrongful policies, training,

16   and customs."  *Id.* at 20–21.  In response, plaintiffs cite California Government Code section

17   815.2(a) as the basis for their negligence claim against the City.  TAC ¶ 82; Opp'n 9.  As to the

18   supervisory defendants, plaintiffs argue paragraphs seventy-two through eighty of the third

19   amended complaint allege in factual detail how all three breached the duty of care they owed to

20   plaintiffs.  *Id.*

21   The court first considers defendants' challenge as to the City.

22   1.   City

23   As noted above, defendants argue the complaint contains no cognizable legal

24   theory to proceed directly against the City.  Defendants do not dispute plaintiffs may bring a

25   negligence claim against the City on a vicarious liability or respondeat superior basis.  Rather,

26   they challenge plaintiffs' attempt to bring a direct claim against the City.

27   Under the Government Claims Act, there is no common law tort liability for public

28   entities in California and this kind of liability must be based on statute.  *See* Cal. Gov't Code §

15

815; *Guzman v. Cty. of Monterey*, 46 Cal. 4th 887, 897 (2009).  Plaintiffs base their claim against

the City on section 815.2 of the Government Code.  TAC ¶ 84.  That section provides that

> [a] public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative.

Cal. Gov't Code § 815.2.  This statute provides a proper basis for finding the City liable on a

theory of vicarious liability.  *See, e.g.*, *Hoff v. Vacaville Unified School Dist.*, 19 Cal. 4th 925, 932

(1998) ("[t]hrough this section [Government Code § 815.2(a)], the California Tort Claims Act

expressly makes the doctrine of respondeat superior applicable to public employers."); *Robinson

v. Solano Cty.*, 278 F.3d 1007, 1016 (9th Cir. 2002) (explaining that California imposes liability

on counties under the doctrine of respondeat superior).  Section 815.2 however is not a proper

basis for a direct claim against the City.

The California Supreme Court has clearly distinguished between vicarious and

direct liability of a public entity.  *See Zelig v. Cty. of L.A.*, 27 Cal. 4th 1112 (2002); *Eastburn v.

Regl. Fire Protec. Auth.*, 31 Cal. 4th 1175 (2003).  In *Zelig*, the California Supreme Court

reviewed a negligence claim, brought by children of a woman who was fatally shot by her ex-

husband in a courthouse, against the county and Sheriff's department.  Before addressing whether

the county could be liable under either a direct or vicarious theory, the state court laid out the

following framework:

> Although the [California Tort Claims] Act provides that a public employee generally is liable for an injury caused by his or her act or omission "to the same extent as a private person" (Gov. Code, § 820, subd. (a)) and that, when the act or omission of the public employee occurs in the scope of employment the public entity will be vicariously liable for the injury (Gov. Code, § 815.2), the Act contains no provision similarly providing that a public entity generally is liable for its own conduct or omission to the same extent as a private person or entity. Rather, the Act provides that a public entity is not liable for an injury "[e]xcept as otherwise provided by statute…." (Gov. Code, § 815.) Certain statutes do provide expressly for public entity liability in circumstances that are somewhat parallel to the potential liability of private individuals and entities but, as past cases have explained, "'[T]he intent of the [Tort Claims Act] is not to expand the rights of plaintiffs in suits

1    against governmental entities, but to confine potential governmental
2    liability to rigidly delineated circumstances. . . .'"

3   *Zelig*, 27 Cal. 4th at 1126–27.  This framework makes clear that a plaintiff must be able to point

4   to one of a small set of "rigidly delineated circumstances" that provide a statutory basis for direct

5   liability.  The Court's discussion further clarifies that section 815.2, which provides only a basis

6   for vicarious liability, is not one of them.  Accordingly, the *Zelig* Court considered only whether

7   plaintiffs had established grounds for direct liability under section 835, addressing when the

8   government may be held liable for maintaining a dangerous condition of public property, and

9   section 845, addressing when the government may be held liable for failure to provide sufficient

10  police protection service.  *Id.* at 1131–47.  It ultimately held that neither provision permitted

11  plaintiff's theory of direct liability against the county.  *Id.*

12          Here, plaintiffs point only to section 815.2 as a basis for their claim of direct

13  liability against the City.  However, as *Zelig* makes clear, this provision provides only a basis for

14  vicarious, rather than direct, liability.  Because plaintiffs fail to provide any other basis for their

15  claim, the claim for direct liability must fail.

16          The court notes that, in spite of plaintiffs' arguments supporting a direct claim, the

17  complaint appears to largely proceed on a respondeat superior basis against the City.  *See* TAC ¶¶

18  82 (City is liable "in respondeat superior"), 84 (City is "liable for injuries proximately caused by

19  acts or omissions of its employees").  Defendants do not challenge plaintiffs' ability to proceed

20  on this basis.  To the extent plaintiffs' fourth claim relies on the City's vicarious liability, it

21  therefore survives defendants' motion.  However, the court GRANTS defendants' motion to

22  dismiss with respect to plaintiffs' negligence claims brought directly against the City.  *See, e.g.*,

23  TAC ¶¶ 83, 85 (alleging *each* defendant owed a duty of care to plaintiffs).  Any direct claims

24  survive only against the individual defendants.

25  /////

26  /////

27  /////

28

17

2.   The Supervisory Defendants:  Tibbet, Belk and Bertsch

Defendants argue plaintiffs inadequately allege negligence as to the supervisory

defendants, Chief Tibbet and Sergeants Belk and Bertsch.[3]  Mot. 20.  Specifically, defendants

argue that plaintiffs allege no facts showing Belk or Bertsch owe a duty of care to plaintiffs;

Tibbet and Bertsch were not present or involved in the November 13, 2013, incident; Bertsch's

review of police reports fails to show breach of any duty owed to plaintiffs; and individual

defendants cannot be held vicariously liable for the acts of others.  *Id.*  In response, plaintiffs cite

various paragraphs of the complaint that allege the duty each supervisory defendant breached

with respect to plaintiffs.  Opp'n 9 (citing TAC ¶¶ 72–80).

Under section 820 of the California Government Code, "a public employee is

liable for injury caused by his act or omission to the same extent as a private person."  Cal. Gov't

Code § 820.  However, "[e]xcept as otherwise provided by statute, a public employee is not liable

for an injury caused by the act or omission of another person."  Cal. Gov't Code § 820.8.  Here,

plaintiffs rely on a direct, rather than a vicarious, theory of liability against the supervisory

defendants, TAC ¶ 87, who are thus liable to the same extent as a private person.  Under

California law, "[e]veryone is responsible . . . by his or her want of ordinary care or skill in the

management of his or her property or person."  Cal. Civ. Code § 1714.  The elements of a claim

for negligence are "(a) a legal duty to use due care; (b) a breach of such legal duty; [and] (c) the

breach as the proximate or legal cause of the resulting injury."  *Ladd v. Cty. of San Mateo*, 12 Cal.

4th 913, 917–18 (1996) (internal quotes and citations omitted).

Here, plaintiffs allege each of the necessary elements of a negligence claim against

the supervisory defendants.  The complaint points to two sets of specific obligations as part of the

supervisory defendants' obligation of due care: (1) "to properly and adequately hire, investigate,

train, supervise, monitor, evaluate, and discipline their employees, agents, and/or law

enforcement officers to ensure that those employees/agents/officers act at all times in the public

---

[3]  Although defendants challenge paragraph 87 of the third amended complaint, which
includes Belk as a supervisory defendant, defendants do not challenge paragraph 86, which
includes Belk for direct involvement in the November 13, 2013, incident.  Mot. 20.

1   interest and in conformance with law;" and (2) "to refrain from making, enforcing, and/or

2   tolerating the wrongful policies, training, and customs" raised in the second claim.  TAC ¶ 87.

3   Plaintiffs allege defendants breached those duties, *id.* ¶ 88, and repeatedly identify supervisory

4   defendants as policymakers responsible for the underlying constitutional violations, *id.* ¶¶ 67–69,

5   74.  Plaintiffs allege defendants' breach of duties caused them harm.  *Id.* ¶ 89.  Plaintiffs'

6   complaint alleges each of the necessary elements of a negligence claim against the supervisory

7   defendants.  The duties of care plaintiffs cite belong to the supervisory defendants directly, and

8   are not obligations of others for which the supervisory defendants would be vicariously liable.

9       Defendants' motion to dismiss plaintiffs' negligence claim is DENIED as to the

10   supervisory defendants.

11       D.      Punitive Damages:  Tibbet and Bertsch

12       Defendants challenge plaintiffs' prayer for punitive damages against defendants

13   Tibbet and Bertsch.  Mot. 21.  Although the complaint labels the punitive damages as a "prayer

14   for relief" rather than a "claim," defendants may properly move to dismiss the request for

15   punitive damages under Rule 12(b)(6) based on an argument that the complaint does not support

16   such an award as a matter of law.  *Walker v. McCoud Cmty. Servs. Dist.*, 2:16-61 WBS CMK,

17   2016 WL 951635, at *2 (E.D. Cal. Mar. 14, 2016); *Kelley v. Corr. Corp. of Am.*, 750 F. Supp. 2d

18   1132, 1146 (E.D. Cal. 2010); *see also Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974

19   (9th Cir. 2010) (attempt to strike damages claim under Rule 12(f), for failing as a matter of law,

20   "better suited" as a Rule 12(b)(6) motion).

21       Because defendants focus solely on the standards of punitive damages under

22   section 3294, *see* Mot. 21, the court need not address whether plaintiffs have sufficiently alleged

23   punitive damages under the federal claims, which may be subject to a different requirement.  *See,*

24   *e.g.*, *Smith v. Wade*, 461 U.S. 30, 56 (1983) (requiring "evil motive or intent" or "reckless or

25   callous indifference to the federally protected rights of others" to adequately plead punitive

26   damages for a section 1983 claim).

27       Under California Civil Code section 3294, punitive damages may be awarded

28   "where it is proven by clear and convincing evidence that the defendant has been guilty of

1    oppression, fraud, or malice."  Cal. Civ. Code § 3294(a).  Those terms are defined as follows:

2
(1) "Malice" means conduct which is intended by the defendant to
3    cause injury to the plaintiff or despicable conduct which is carried
on by the defendant with a willful and conscious disregard of the
4    rights or safety of others.

5    (2) "Oppression" means despicable conduct that subjects a person
to cruel and unjust hardship in conscious disregard of that person's
6    rights.

7    (3) "Fraud" means an intentional misrepresentation, deceit, or
concealment of a material fact known to the defendant with the
8    intention on the part of the defendant of thereby depriving a person
of property or legal rights or otherwise causing injury.

9    Cal. Civ. Code § 3294(c).

10          In the face of a 12(b)(6) motion, conclusory assertions of "malice, fraud or

11   oppression" are insufficient.  *See Endurance Am. Specialty Ins. Co. v. Lance-Kashian & Co.*,

12   CV F 10-1284 LJO DLB, 2010 WL 3619476, at *17 (E.D. Cal. Sept. 13, 2010) (discussing series

13   of state decisions requiring more than conclusions of law as to oppression, fraud, or malice).

14   Instead, the complaint must include "factual allegations from which fraudulent, malicious or

15   oppressive conduct could possibly be inferred."  *Kelley*, 750 F. Supp. 2d at 1147.

16          Here, although plaintiffs do not expressly allege "oppression," "fraud," or

17   "malice" on the part of Tibbet and Bertsch, the factual allegations in the complaint are sufficient

18   to support these characterizations.  Plaintiffs allege Tibbet and Bertsch "knowingly allowed

19   subordinate personnel to intentionally disperse false information to cover for officers'

20   wrongdoing," TAC ¶ 67; and "instead of conducting a real investigation into Defendant officers'

21   wrongdoing," Tibbet and Bertsch would regularly "deny any wrong doing and fail to discipline

22   officers for their wrongdoing," *id.* ¶ 68.  Plaintiffs also say that Bertsch has continued to

23   "inadequately and improperly investigate citizen complaints and claims of police misconduct" at

24   the behest of Tibbett.  *Id.* ¶ 69.  The conduct plaintiffs reference involves intentional

25   misrepresentation and concealment, and thus could establish "fraud."  In addition, given the

26   alleged history of constitutional violations, this conduct may be sufficient to establish a "willful

27   and conscious disregard of the rights or safety of others" and thus could establish "malice."

28   /////

1  Defendants' motion to dismiss the claim for punitive damages is DENIED as to

2  Tibbet and Bertsch.

3      E.    <u>Leave to Amend</u>

4  Plaintiffs ask the court to grant leave to amend their complaint if any part of

5  defendants' motion to dismiss is granted.  Reply 8, 10.

6  Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be

7  freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to

8  facilitate decision on the merits, rather than on the pleadings or technicalities."  *Lopez v. Smith*,

9  203 F.3d 1122, 1127, 1140 (9th Cir. 2000) (en banc) (internal quotation marks and alterations

10 omitted).  Generally, the court should only deny a request for leave to amend if allowing

11 amendment would unduly prejudice the opposing party, cause undue delay, be futile, or if the

12 moving party has acted in bad faith.  *Leadsinger, Inc. v. BMG Music Publ'g.*, 512 F.3d 522, 532

13 (9th Cir. 2008); *Klamath-Lake Pharm. Ass'n v. Klamath Medical Serv. Bureau*, 701 F.2d 1276,

14 1292–93 (9th Cir. 1983).

15 The court grants defendants' motion on a limited basis.  As explained above, the

16 court dismisses plaintiffs' negligence claim brought directly against the City, but does not dismiss

17 plaintiffs' negligence claim against the City on a vicarious liability theory.  Although the defect in

18 plaintiffs' direct negligence claim against the City is potentially incurable, given the liberal

19 amendment policy under Rule 15, the court GRANTS plaintiffs' request for leave to amend the

20 complaint to include a viable statutory basis for their direct negligence claim against the City.

21 IV.    <u>CONCLUSION</u>

22 The court GRANTS defendants' motion to dismiss plaintiffs' claim of direct

23 negligence against the City.

24 The court DENIES defendants' motion as to all remaining claims, including

25 plaintiffs' negligence claim against the City based on a theory of vicarious liability.

26 The court GRANTS plaintiffs' request for leave to amend and DIRECTS plaintiffs

27 to file any fourth amended complaint within twenty-one (21) days of the date of this order.

28 /////

1          This order resolves ECF No. 27.

2          IT IS SO ORDERED.

3     DATED:  September 25, 2017.

4

5                                                    _____

6                                              UNITED STATES DISTRICT JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28